UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DALE TOPPING,

             Plaintiff,

vs.                                    Case No.  2:09-cv-396-FtM-29DNF

UNITED   STATES   DEPARTMENT   OF
EDUCATION,   and   MICHIGAN   HIGHER
EDUCATION  AUTHORITY,  ARNE  DUNCAN,
DIANE   SPADONI,   JAKE   LEONARD,
JACQUENETTE   THOMPSON,   MICHAEL
FLANAGAN,  HAROLD  HIGHTOWER,  and
KAREN PAPOI

             Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on Defendant the United

States Department of Education and Jacquenette Thompson's Motion to

Dismiss Second Amended Complaint (Doc. #161) filed on April 22,

2011, Defendants Michael P. Flanagan, Karen Papoi, and the Michigan

Higher Education Assistance Authority's Motion to Dismiss (Doc.

#164) filed on April 25, 2011, and Defendant Diane Spadoni's Motion

to Dismiss Second Amended Complaint (Doc. #176), filed on June 2,

2011.   Plaintiff Dale J. Topping (Topping or plaintiff) filed

responses.   (Docs. ##162, 172, 177.)   For the reasons set forth

below, the motions are granted.

                              **I.**

     In deciding a Rule 12(b)(6) motion to dismiss, the Court must

accept all well-pleaded factual allegations in a complaint as true

and take them in the light most favorable to plaintiff.  <u>Erickson</u>
<u>v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Christopher v. Harbury</u>, 536 U.S.
403, 406 (2002).  "To survive dismissal, the complaint's
allegations must plausibly suggest that the [plaintiff] has a right
to relief, raising that possibility above a speculative level; if
they do not, the plaintiff's complaint should be dismissed."  <u>James</u>
<u>River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274
(11th Cir. 2008) (<u>citing</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
555-56 (2007)); <u>see also</u> <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276,
1291 (11th Cir. 2010).  The former rule-that "[a] complaint should
be dismissed only if it appears beyond doubt that the plaintiffs
can prove no set of facts which would entitle them to relief," <u>La</u>
<u>Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir.
2004)-has been retired by <u>Twombly</u>.  <u>James River Ins. Co .</u>, 540 F.3d
at 1274.  Thus, the Court engages in a two-step approach: "When
there are well-pleaded factual allegations, a court should assume
their veracity and then determine whether they plausibly give rise
to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662
(2009).  The Court need not accept as true legal conclusions or
mere conclusory statements.  <u>Id.</u>

## II.

The Second Amended Complaint alleges the following:

Plaintiff received the following four (4) loans in connection
with his undergraduate studies at Michigan State University: (1)

February 17, 1980, in the amount of $2,068.00; (2) February 17, 1982, in the amount of $2,662.00; (3) January 4, 1983, in the amount of $432.00, and (4) April 2, 2005, in the amount of $955.00. Topping claims that the second loan, dated February 17, 1982 (the 1982 loan), was refunded due to an administrative error that prevented him from completing classes "or obtaining any consideration for the time and monies invested." Therefore, he asserts he has no responsibility for that loan. (Doc. #155, ¶¶12-13.)

Despite the fact that the 1982 loan had been refunded, Topping received a billing statement in 1986 from Central Michigan University that listed the loan.[1] Plaintiff contacted the servicer of the loan, Wachovia Bank, to inform them that the loan had been refunded. Wachovia acknowledged the error and withdrew from servicing his loans. (Id. at ¶¶12-14.)

Topping made monthly, on-time payments on his remaining three loans. However, he received correspondence from defendant Karen Papoi (Papoi), an employee of the Michigan Higher Education Assistance Authority (MHEAA), that indicated that the MHEAA unilaterally consolidated his student loans for purposes of

---

[1] Plaintiff does not explain why Central Michigan University, rather that Michigan State University, sent him a letter regarding his student loans. He does, however, indicate that at the time he received the letter he was an employee at Central Michigan University. (Doc. #155, ¶¶ 14-15.)

repayment.  The 1982 loan was included in the consolidation.  (Id. at ¶¶15-16.)

From 1986 through 1991 Topping contends that his credit report alternated between demonstrating that his student loans were paid in full, that he was in default on two loans, or that he was in default of six loans.  In 1991, he contends that defendant Harold Hightower, an employee of the MHEAA, sent him a letter indicating that while three of his loans had been paid in full, there was no proof that the 1982 loan had been refunded.  Topping provided proof to Hightower that the loan had been refunded.  Nonetheless, Hightower threatened to damage plaintiff's credit if he failed to pay the 1982 loan.  (Id. at ¶¶17-19.)

Plaintiff filed suit in Michigan state court against the Michigan Treasury, Michigan State University, and an entity he identifies as "MGA"[2] in 1991 alleging fraud and libel in association with the incorrect data reflected on his credit report. Topping contends that the defendants in that action improperly argued sovereign immunity and statute of limitations defenses that were granted by the Judge. (Id. at ¶¶19-24.)

Subsequently, in 1993, Topping was informed by the MHEAA that he could have a hearing regarding his loans if he supplied the proper request form.  Topping responded to the MHEAA's

---

[2]The Court assumes this acronym stands for "Michigan Guaranty Agency."

correspondence by filling out a form requesting a hearing, but never received a response.  In 1996, however, he was informed by the United States Department of Education that his loans had been assigned to them.  In 1998 plaintiff made a second request for a hearing regarding his loans.  The Chicago office of the Department of Education responded that he would be provided a time and place for a hearing.  When plaintiff called for his hearing, however, the Department of Education informed him that the hearing was scheduled for an individual with the last name of "Toppina."  Because Topping lacked identification demonstrating his last name was "Toppina," Topping was prohibited from participating in the hearing.  (Id. at ¶¶ 25-28.)

As a result, Plaintiff contacted his congresswoman to investigate this chain of events.  Defendant Diane Spadoni, an employee of the Department of Education, was ultimately assigned to resolve the matter.  Topping contends Spadoni refused to evaluate the documentation provided by him that demonstrated he did not owe on his loans.  Instead, Spadoni informed plaintiff that the lender had never been refunded.  Spadoni also threatened plaintiff with "administrative garnishment."   (Id. at ¶¶29-31.)

In 2002 plaintiff requested a hearing before an Administrative Law Judge.  He received a written response entitled "notice of garnishment hearing decision" from defendant Jake Leonard, another employee of the Department of Education, that indicated that a

hearing had already been held. At the hearing, it had been determined that Topping did not have a financial hardship sufficient to excuse the debt. Topping contends there was no rational relationship between the facts of his case and the decision made by the Administrative Law Judge because he had never asserted financial hardship was the reason he did not pay the 1982 loan. Following the hearing, in 2002 Topping contends he received a letter from Spadoni admitting that the hearing was held for the wrong reason and without his presence. Spadoni also withdrew the garnishment order. (Id. at ¶¶33-35.)

In 2008 Topping again began to receive notices from the Department of Education. He contacted his Senator, Bill Nelson, regarding the situation. Senator Nelson contacted an ombudsperson within the Department of Education who Topping identifies simply as "Behan." Behan provided a letter to Senator Nelson that indicated that even more student loans were involved.[3] (Id. at ¶¶36-37.)

On Friday, June 12, 2009, plaintiff contends the defendants seized his property in the amount of $250.00. At the time that this money was seized, plaintiff was receiving Social Security Disability Insurance benefits. Plaintiff contends that although the defendants knew he was on social security disability insurance benefits, they seized his property anyway. This caused him to have to make decisions between paying for medical care or food and rent.

---

[3]Topping does not name Behan as a defendant in his Second Amended Complaint.

He claims that as a result, in September 2009 he suffered two strokes resulting in severe brain damage. Plaintiff alleges his property was again seized on October 2, 2009, and November 3, 2009, in the amount of $261.60. (Id. at ¶¶38-44.)

Topping filed this action on June 19, 2009, (Doc. #1) one week after the first seizure of his property. After plaintiff made several attempts at amending his Complaint (See Docs. ##7, 39, 91) on March 29, 2011, this Court issued an Order (Doc. #146) noting the deficiencies in his complaints and providing plaintiff with specific instruction regarding filing a second amended complaint.[4]

In response to the Court's Order, on April 8, 2011, Topping filed a three (3) Count Second Amended Complaint. (Doc. #155.) All three Counts are brought pursuant to 42 U.S.C. § 1983. Count I alleges that defendants Hightower, Papoi, Spadoni, Leonard, and Thompson unlawfully seized his property without due process of law. Count II alleges that defendants Flanagan, MHEAA, MHEAA Supervisors, Duncan, the Department of Education, and supervisors of the Department of Education violated his civil rights through supervision, customs, policies, acquiescence, and training. Finally, Count III alleges that all of the defendants conspired to violate his civil rights. All defendants are sued in both their

---

[4]The Court noted that it was unclear which allegations were against which defendants and therefore failed to meet the pleading requirements of Fed. R. Civ. P. 8 and 10. The Court instructed Topping to re-file a Second Amended Complaint that among other things included allegations as to each individual defendant. (Doc. #146, pp. 2-3.)

official and individual capacities.  (Doc. #155, ¶1.)  Topping

asserts jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.[5]

### III.

### A.    Claims Against Federal Defendants

Defendants Department of Education and Thompson seek to

dismiss plaintiff's Second Amended Complaint because:  (1) the

federal government and its officials do not act under color of

state law and therefore are not subject to suit under § 1983; (2)

the Department of Education is shielded from suit by sovereign

immunity; (3) there can be no viable due process claim because the

Administrative Procedures Act provided plaintiff with an effective

avenue of review of the agency determinations; and (4) Thompson is

entitled to absolute immunity, or at the very least, qualified

immunity as to plaintiff's claims.  (Doc. #161).  Defendant Spadoni

seeks to dismiss plaintiff's Second Amended Complaint because:  (1)

the federal government and its officials do not act under color of

state law and therefore are not subject to suit under § 1983; (2)

there can be no viable due process claim because the Administrative

Procedures Act provided plaintiff with an effective avenue of

review of the agency determinations; (3) Spadoni is entitled to

qualified immunity as to plaintiff's claims; and (4) plaintiff's

_____

[5]Topping also contends that the amount in controversy in this
case exceeds $75,000, the court's jurisdictional minimum in
diversity of citizenship cases.  As this matter invokes federal
question jurisdiction, the amount in controversy is irrelevant.

claims are barred by the statute of limitations. (Doc. #176). In response, Topping contends that he has provided irrefutable proof that he does not owe student loan debt. He further contends that these defendant's assertions of immunity are without merit because they acted illegally and without a rational basis.

**(1)** **Section 1983 Claims:**

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that the defendant acted "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The Department of Education is a federal agency and Spadoni and Thompson were officials of that agency. These defendants act under color of federal law, rather than state law. As such, plaintiff has failed to state any § 1983 claim against the federal defendants. <u>Leonard v. F.B.I.</u>, 405 F. App'x 386, 387 (11th Cir. 2010)("Section 1983 applies only to state officials,. . . .") Therefore, all three § 1983 claims are dismissed with prejudice as to the federal defendants named in those counts.

**(2)** **<u>Bivens</u> Claims:**

Read liberally given plaintiff's *pro se* status, plaintiff's complaint could be construed as an action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) as to the federal defendants, and pursuant to § 1983 as to the state defendants. <u>Leonard</u>, 405 F. App'x at 387-88. "In <u>Bivens</u>, the Supreme Court for the first time implied a right of

action for damages against federal officials [for a constitutional violation] in the absence of an act of Congress authorizing such an action." Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008) (internal citation omitted). A Bivens claim may be asserted only against a federal officer acting in his or her individual capacity, and not against an officer acting in an official capacity. Thibeaux v. U.S. Atty. Gen., 275 F. App'x 889 (11th Cir. 2008); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70-72 (2001), or against a federal agency, Okpala v. Jordan, 193 F. App'x 850, 852 (11th Cir. 2006) (per curiam). Thus, none of the counts properly state a Bivens claim against the Department of Education, or against Spadoni and Thompson in their official capacities. Therefore, if construed as Bivens claims, all counts will be dismissed with prejudice as to the U.S. Department of Education and as to Spadoni and Thompson in their official capacities.

As to the claims against Spadoni and Thompson in their individual capacities, a Bivens action requires plaintiff to demonstrate that: (1) a federal official acted under color of federal law; (2) and deprived him of a right secured by the United States Constitution. Bivens, 403 U.S. at 388; Correctional Servs. Corp. v. Malekso, 534 U.S. 61, 71 (2001). Because claims under 42 U.S.C § 1983 and Bivens are similar, courts generally apply § 1983 law to Bivens cases. Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995). In order to maintain a cause of action against defendants in their individual capacity, a plaintiff must allege

facts which, if proved, show that the defendants were personally involved in the intentional deprivation of a constitutional right. Bivens, 403 U.S. at 396-97. Vicarious liability is inapplicable in a Bivens action. Ashcroft v. Iqbal, 556 U.S. 662 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 1948.

### (a) Thompson

Topping claims that Thompson deprived him of property without due process (Count I) and conspired to deprive him of his constitutional rights (Count III). Topping fails to allege any set of facts against Thompson which plausibly states a Bivens action for depriving plaintiff of a constitutional right. The only involvement by Thompson alleged in the Second Amended Complaint occurred on October 25, 2009, after the filing of the civil action in this case. Plaintiff alleges he received a telephone call from Thompson which he understood to possibly be the method the Department of Education chose to conduct discovery. (Doc. #155, ¶43.) The remaining paragraphs concerning Thompson simply make legal conclusions and characterize the telephone call as a "sham process" and "some odd discovery process." (Doc. #155, ¶¶50-53). Plaintiff does not allege any facts that demonstrate how this telephone call resulted in a deprivation of his property, which according to the Second Amended Complaint had already been seized,

or how the telephone call related to the conspiracy alleged in the Second Amended Complaint. Accordingly, plaintiff has failed to state a plausible <u>Bivens</u> claim against Thompson in her individual capacity, and claims against her will be dismissed without prejudice.

**(b) Spadoni**

Plaintiff also names Spadoni as a defendant in Counts I and III. Spadoni contends that she is entitled to qualified immunity because all of her actions were discretionary, and further seeks dismissal because the claims are barred by the statute of limitations.

**(i) Count I**

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1305 (11th Cir. 2009) (internal citations and quotation omitted). The qualified immunity principles are well established. The government official must first show that he or she was engaged in a "discretionary function" when the allegedly unlawful act was committed. If this is shown, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. To do this, plaintiff must show that:

(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation.  <u>Brown v. City of Hunstsville</u>, 608 F.3d 724, 733-34 (11th Cir. 2010); <u>Mann</u>, 588 F.3d at 1305; <u>Corey Airport Servs. v. Decosta</u>, 587 F.3d 1280, 1285 (11th Cir. 2009).

The Court finds that Topping has alleged sufficient facts to demonstrate that, assuming discretionary conduct by Spadoni, plaintiff's constitutional right of due process was violated. Taking the allegations of the Second Amended Complaint as true, Spadoni "refused to evaluate the documentation provided to her" by Topping. (Doc. #155, ¶31.)  Further, Spadoni permitted the hearing regarding his claim to be conducted without his presence. Plaintiff's Complaint also suggests that Spadoni, who had plaintiff's evidentiary documentation in her sole possession, did not provide such documentation during the hearing.  Thus, plaintiff was unable to present his arguments regarding the disputed loan. (<u>Id.</u> at ¶34.)   Accordingly, the motion to dismiss based upon qualified immunity is denied.

The Court finds, however, that Spadoni must be dismissed as a defendant because plaintiff's claims against her are time-barred. A <u>Bivens</u> actions is governed by the same statute of limitations that governs a complaint brought pursuant to Section 1983.  <u>Garza v. Hudson</u>, 436 F. App'x 924, 925 (11th Cir. 2011) <u>citing</u> <u>Kelly v. Serna</u>, 87 F.3d 1235, 1238 (11th Cir. 1996).  Because Congress did not specifically adopt a statute of limitations governing Section

1983 actions, federal courts apply the forum state's residual statute of limitations for personal injury actions. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1188 (11th Cir. 1999). In Florida, the applicable statute of limitations period is four years. <u>Id.</u>; Fla. Stat. § 95.11(3). The statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." <u>Lovett v. Ray</u>, 327 F.3d 1181, 1182 (11th Cir. 2003).

The conduct by Spadoni which plaintiff asserts violated his constitutional right to due process ended in 2002 and was known by plaintiff to have occurred at the time. (Doc. #155, ¶¶30-35.) Thus, plaintiff had until the beginning of 2007 to file his claim against Spandoni, but did not do so until June 19, 2009. Accordingly, Count I against Spadoni in her individual capacity is dismissed with prejudice as time-barred.

### (ii) Count III

Count III alleges that all of the defendants, including Spadoni, generally conspired together to deprive Topping of his constitutional rights. Even if the Court were to conclude that this Count was filed within the statute of limitations period, plaintiff has failed to state a conspiracy claim against any served defendant.

-14-

To prove a Section 1983 claim for conspiracy, a plaintiff must demonstrate that the parties "reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." Shell v. U.S. Dep't of Housing and Urban Dev., 355 F. App'x 300, 307 (11th Cir. 2009) quoting Bailey v. Bd. of Cnty. Cmm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed . . . . A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."  Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984).  A conspiracy alleged pursuant to Section 1983 must also allege that the injury was caused by a person who is a state actor, or whose conduct is chargeable to the state.  Scott v. Dixon, 720 F.2d 1542, 1545 (11th Cir. 1983) cert denied, 469 U.S. 832 (1984).  There are no factual allegations which make it plausible that any of the defendants worked together to deprive plaintiff of his constitutional rights.  Accordingly, Count III against Spadoni is dismissed without prejudice.

**(3)  Federal Tort Claims Act**

Again liberally construing the Second Amended Complaint because of plaintiff's *pro se* status, it is possible that claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b),

2671-2680, may be asserted against one or more of the federal defendants.  However, the FTCA states in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  This requirement is jurisdictional, and failure to exhaust administrative remedies prevents judicial review of a tort claim against the United States.  <u>Turner ex rel. Turner v. United States</u>, 514 F.3d 1194, 1200 (11th Cir. 2008). The Supreme Court has held that a *pro se* petitioner is bound by the FTCA's exhaustion requirement, stating "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993).  The Second Amended Complaint fails to allege that the administrative exhaustion requirement has been satisfied in this case, and indeed states that suit was filed one week after the first seizure of property.  (Doc. #155, ¶¶38-39.)  Therefore, the Court would lack subject matter jurisdiction over such a claim.

Accordingly, the federal defendant's motions to dismiss are granted to the extent set forth above.

**B.  State of Michigan Defendants**

Defendants MHEAA, Flanagan, and Papoi (the Michigan defendants) seek to dismiss all claims asserted against them in plaintiff's Second Amended Complaint for multiple reasons under Fed. R. Civ. P. 12(b)(1) through (6), or alternatively, move for Summary Judgment under Fed. R. Civ. P. 56.

**(1)  Count I**

The only served Michigan defendant named in Count I is Papoi. Plaintiff asserts that Papoi ignored multiple requests for a fair and impartial review of his alleged student loan debt.  Plaintiff contends that it was foreseeable by Papoi that her actions would ultimately result in the seizure of his property.  (Doc. #155, ¶47.)

As discussed above, Section 1983 does not have its own statute of limitations, and instead, Florida's four year statute of limitations period is applicable in this matter.  Here, Topping alleges that at some point between 1986 and 1991, Papoi corresponded with the plaintiff regarding his student loans. During this time, Papoi consolidated his student loans without an explanation for her actions.  Although plaintiff does not provide the Court with an exact date of Papoi's wrongdoing, he does not allege any wrongdoing by Papoi after 1991.  Plaintiff's complaint was not filed until June 19, 2009, eighteen years later.  (Doc.

#1.)  Therefore, Count I is dismissed with prejudice as to Papoi as time-barred.

**(2)  Count II**

Count II alleges constitutional violations through supervision, customs, policies, acquiescence, and training, and names MHEAA and Flanagan as the only Michigan defendants.

**(a)  MHEAA**

The Supreme Court has held that a state agency is not a "person" subject to liability for purposes of Section 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The MHEAA is designated by statute as a state agency. Specifically, M.C.L.A. § 390.951[6] created the MHEAA as an agency within the department of education.  Accordingly, the MHEAA is an improper defendant for purposes of Section 1983, and Count II is dismissed with prejudice as to MHEAA.

---

[6]M.C.L.A. § 390.951 provides,

There is created a nonprofit authority as an agency in the department of education, to be known as the "Michigan higher education assistance authority". The authority may contract and be contracted with, sue and be sued, implead and be impleaded, and complain and defend in all courts of law and equity. The authority shall exercise its powers as an autonomous entity, independent of the director of the department of education.

Id.

**(b)  Flanagan**

Plaintiff makes no specific allegations against Flanagan in Count II, and instead merely names him as a party in the caption of his Second Amended Complaint and in the heading of Count II.  The only specific information provided by plaintiff regarding Flanagan is that he "is the Superintendent of Public Instruction for the State of Michigan . . . Prior to that appointment [he] was the Executive Director of the Michigan Association of School Administrators from 2001 until 2005 and he was the Governor's education adviser in 2003."  (Doc. #153, ¶9.)

Read liberally, at most Topping asserts a claim against Flanagan for his supervisory role.  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  <u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011) <u>quoting</u> <u>West v. Tillman</u>, 496 F.3d 1321, 1328 (11th Cir. 2007).  To maintain a claim against a supervisory defendant, the plaintiff must allege (1) the personal involvement of the supervisor in the violation of the plaintiff's constitutional rights, (2) the existence of either a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts that support an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged

constitutional deprivation that he then failed to correct. <u>See</u>
<u>West</u>, 496 F.3d at 1328-29 (listing factors in context of summary
judgment). A supervisor is not liable under Section 1983 for mere
negligence in the training or supervision of his employees.
<u>Greason v. Kemp</u>, 891 F.2d 829, 836-37 (11th Cir. 1990).

Plaintiff's Second Amended Complaint fails to allege <u>any</u> facts
that would support a theory of *respondeat superior* liability under
Section 1983 against Flanagan. Additionally, any such claim would
be barred by the statute of limitations. Accordingly, Count II
against Flanagan is dismissed with prejudice.

**(3)  Count III**

Count III alleges that all of the defendants, including the
MHEAA and Flanagan, alleges that all of the defendants generally
conspired together to deprive Topping of his Constitutional rights.
As discussed in Section III(A)(2)(b)(i), <u>supra</u>, Topping failed to
plead any factual allegations which make it plausible that any of
the defendants worked together to deprive him of his constitutional
rights. Accordingly, plaintiff has failed to state a claim for
Section 1983 conspiracy against the MHEAA because it is not a
"person" within the meaning of § 1983 and has failed to state a
claim as to Flanagan. Count III will be dismissed with prejudice
as to MHEAA and without prejudice as to Flanagan.

As a final matter, the Court notes that service of process has not been accomplished on federal defendants Arne Duncan, Jake Leonard, and any unnamed supervisors of the Department of Education. As to defendant Harold Hightower, the record reflects that on July 6, 2011, service was hand delivered to Keith C. Davis at Hightower's home residence, (Doc. #180), but also reflects that service on Hightower was not effectuated because he is deceased. (Doc. #181.) Plaintiff will be required to show cause why the Second Amended Complaint should not be dismissed as to these defendants for failure to serve process. Fed. R. Civ. P. 4(m).

Accordingly, it is now

**ORDERED:**

1. Defendant the United States Department of Education and Jacquenette Thompson's Motion to Dismiss Second Amended Complaint (Doc. #161) is **GRANTED,** and all counts against these defendants are **DISMISSED** as set forth above.

2. Defendant Diane Spadoni's Motion to Dismiss Second Amended Complaint (Doc. #176) is **GRANTED,** and all counts against this defendant are **DISMISSED** as set forth above.

3. Defendant's MHEAA, Michael Flanagan, and Karen Papoi's Motion to Dismiss (Doc. #164) is **GRANTED,** and all counts against these defendants are **DISMISSED** as set forth above.

4. Plaintiff shall show cause within **TWENTY-ONE (21) DAYS** of this Opinion and Order why the case should not be dismissed against defendants who have not been served with process.

**DONE AND ORDERED** at Fort Myers, Florida, this ___8th___ day of February, 2012.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record